# CASES AT LAW

DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY.

MARCH TERM, 1904

---

THE STATE, DEFENDANT IN ERROR, v. JOHN LYONS, PLAINTIFF IN ERROR.

Argued March 21, 1904—Decided June 21, 1904.

1. The provisions of section 136 of the revised Criminal Procedure act of 1898 enlarge the privilege and right of one convicted of crime to question the propriety of his conviction beyond the limits of the privilege and right previously conferred of a review of errors assigned upon the record or upon exceptions duly taken and allowed. It does not supersede a review of matters reviewable upon assignments of error.

2. When one convicted of crime desires this extended review he must procure, to be returned with the writ of error, the entire record of the proceedings at the trial, and by the provisions of section 137 he must specify the causes therein relied upon for relief or reversal under the act. The specification of causes must be filed in the case in the reviewing court, and a copy served upon the official representative of the prosecution in the time prescribed by section 137.

3. Causes for relief or reversal not thus specified, and not otherwise presented by assignments of error upon exceptions duly taken and allowed, need not be considered by the reviewing court.

4. Peremptory challenges of a juror operate to exclude him without any cause assigned. The provisions of the supplement to the Jury act, approved April 1st, 1887 (*Pamph. L.*, p. 132), pro-

635

viding that challenges to jurors for any cause whatever, in any suit, civil or criminal, may be made at any time before the juror is actually sworn, are not applicable to peremptory challenges which are without cause assigned.

5. A peremptory challenge must be interposed before the juror is directed to be sworn, and has, in obedience to the direction, placed his hand upon the book. A challenge interposed afterward, and after the clerk has commenced to administer the oath, comes too late, and should be disregarded.

6. Upon the trial of an indictment for murder which was claimed by the state to have been committed in perpetrating or attempting to perpetrate a robbery of silk in a silk mill at Paterson, the defendant, when examined as a witness in his own behalf, testified that he and an accomplice had gone from New York to Paterson shortly before the time of the occurrence in question and had examined several silk mills with a purpose of breaking into and robbing them; that they arranged to come to Paterson on the night in question to carry out that purpose. In pursuing that examination, his counsel asked defendant if he had returned to Paterson after that night, and, on his admitting that he had, he was asked by the trial judge whether he had come on the same sort of errand. *Held*, that no wrong or injury was done defendant by the question, which gave him the opportunity, by denying such purpose, to repel the prejudicial inference which the jury might otherwise have drawn.

7. The jury would have been justified in finding, upon the evidence, that a silk mill was broken into by two persons; that a locked closet was broken open and valuable silk taken therefrom; that the night watchman was going toward the room in which the silk was, and when within a few feet of the door, was struck down by a blow on the head. *Held*, that it was not erroneous to charge that the violence used was in perpetrating or attempting to perpetrate a robbery.

8. The state produced the accomplice and examined him as a witness against defendant. The trial judge instructed the jury that the evidence of an accomplice was insufficient to justify the conviction of defendant, and advised them not to take that evidence as sufficient for conviction unless substantially corroborated in essential features. *Held*, that (*a*) defendant could not object to this instruction, which, if erroneous in law, was in his favor, and (*b*) that no wrong or injury was done defendant by the trial judge in directing the attention of the jury to circumstances established by independent proof or by the admissions of defendant when examined, and submitting to them the inferences therefrom, if corroborative in effect.

On error to the Passaic Oyer and Terminer.

For the plaintiff in error, *Vivian M. Lewis.*

For the defendant in error, *Eugene Emley,* prosecutor of the pleas.

The opinion of the court was delivered by

MAGIE, CHANCELLOR. This writ of error brings before us a judgment of conviction of the plaintiff in error of the crime of murder in the first degree. There is returned with the writ (1) the record of the judgment of conviction; (2) certain bills of exception allowed and sealed; and (3) the entire record of the proceedings had upon the trial of the cause; the last matter being returned under the provisions of section 136 of the revised Criminal Procedure act of 1898. *Pamph. L., p.* 915.

Plaintiff in error has filed twenty-six assignments of error.

Although the plaintiff in error elected to take up the "entire record" with his writ of error, yet it does not appear that he has specified the causes therein relied upon for relief or reversal, as required by section 137 of the Criminal Procedure act, unless the assignments of error serve that purpose. The prosecutor asserted in the argument that no copy of the causes relied on for relief or reversal had been served upon him, as required by the same section, and for that reason he objected to the consideration by the court of certain assignments of error, which alleged error in rulings to which no objection had been made and no exception taken at the trial.

In the case of *State* v. *Young,* 38 *Vroom* 223, which involved a review of a conviction of murder in the first degree, this court had before it questions arising upon sections 136 and 137 of the Criminal Procedure act. It appeared in that case that objection had been made at the trial to the admission in evidence of a statement made by the defendant and claimed by the state to tend to prove his guilt. The exception to the admission of the statement in evidence over the objection had been duly allowed and sealed, and error had been assigned thereon. In dealing with that assignment it

was held that the admission in evidence of a statement in the nature of a confession of the accused was a mixed question of law and fact presented to the trial judge. If there was evidence that the statement was voluntary within the meaning of the law, the finding that it was so by the trial judge was not reviewable upon error. But as the plaintiff in error in that case had elected to bring up with his writ of error the entire record of the proceedings at the trial and had not specified any cause for relief or reversal under section 137, it was deemed questionable whether, upon the mere assignment of error, this court was required to examine the facts upon which the trial judge had acted in ruling to admit the statement, and whether this court could reverse thereon if, in their judgment, the evidence was not sufficient to support the finding of fact. As the question thus presented had not been argued, it was deemed best not to declare any opinion thereon.

But the present case seems to require a decision of the question of the extent of the review which the provisions of sections 136 and 137 compel this court to make, as there are assignments of error not based on any exceptions taken at the trial, and there are no specifications of causes for relief or reversal. Such assignments, under ordinary writs of error bringing up only the record and bills of exceptions, are entirely unavailable to bring into question matters alleged for error thereby. *Robbins* v. *Vanderbeck*, 26 *Vroom* 364; *Wanamassa Park* v. *Clark*, 32 *Id.* 611; *Davis* v. *Littel*, 35 *Id.* 595. Such assignments would doubtless be stricken out on motion. *Delaware, Lackawanna and Western Railroad Co.* v. *Nevelle*, 22 *Id.* 332.

The legislation which is now contained in section 136 of the Criminal Procedure act was plainly designed to enlarge the privilege and right of one convicted of crime to question the propriety of his conviction beyond the limits of the privilege and right previously conferred by our statute, which permitted exceptions to be taken and required errors assigned thereon to be reviewed. It was not designed to supersede a review of matters reviewable under assignments of error. On the contrary, the relief permitted, when it appeared from the record of

the trial that the plaintiff in error had suffered manifest wrong or injury in certain respects, is to be given "whether objection was made thereto or not," and "whether a bill of exceptions was settled, signed and sealed thereto and error assigned thereon or not." The plain purpose is to permit a review by writ of error (1) for errors properly assigned upon the record or bills of exception, and (2) for matters appearing in the trial record disclosing that manifest wrong or injury had been done to plaintiff in error by the course taken at the trial in respect to certain specified matters.

Matters raised by assignments of errors upon the record or upon bills of exceptions are sufficiently disclosed to the representatives of the state by the filing of such assignments. But under section 136 matters not within any exceptions and not the proper subject of exceptions are made reviewable. So the legislature, by section 137, wisely required the plaintiff in error, in every case in which he elects to take up the entire record of the trial, not only to specify the causes in that record relied on for relief or reversal other than those presented by bill of exception, but also to notify the officer representing the state of the causes relied on by serving upon him a copy of the specifications. While there is no express provision in that section that such specifications should be placed upon the files of this court, I think it is plainly to be inferred from the direction to serve a copy thereof at least ten days before the first day of the term at which the cause is to be heard. In no other mode can the specifications be presented to or recognized by this court. It also seems obvious that the plaintiff in error must be confined to the causes for relief or reversal shown by the specifications filed and served. The Supreme Court, in a case where the entire record of the trial was returned with the writ of error, held that no causes except those specified could be considered. *State* v. *Hess,* 36 *Vroom* 544. Perhaps the court, for good reasons, might permit amendment of the specifications or the filing of additional specifications upon proper terms.

It results that causes for relief or reversal not specified as required by section 137, and not otherwise the subject of re-

view upon exceptions and assignments, are not required to be considered by the reviewing court.

There were several causes strenuously urged in this argument which, upon this construction of the statute, we are not required to consider, but they were pointed out by assignments of error duly filed. No motion was made in behalf of the state to strike out such assignments, because they were not based upon any exception allowed and sealed. Had such a motion been made the court might, perhaps, have required as a condition of striking them out that plaintiff in error should be permitted to put in specifications of causes requisite to present those points.

Whether the court should give such a permission as a matter of right is not intended to be decided. It is sufficient to say that the practice on this legislation has been unsettled, and we have deemed it proper, *in favorem vitæ*, to consider the questions argued, although not presented by proper exceptions or included in any specifications of causes, as required by the statute.

It is first argued that the plaintiff in error suffered wrong and injury because of the refusal of the trial judge to permit the interposition of a peremptory challenge to a juror called. This contention was put upon two grounds—*first*, that the oath was administered to him so quickly as not to permit the interposition of the challenge; and *second*, that the challenge was in fact made before the juror was actually sworn, and so was in time, and should have required the rejection of the juror. There was no exception taken to the refusal.

The first ground is entirely lacking in support from the record of the proceedings at the trial, as certified by the Court of Oyer and Terminer. By that certificate it appears that nine jurymen had been called and had been separately sworn in the mode customary in this state in the trial of such indictments. The certificate then proceeds:

"After nine jurymen had thus been separately sworn and had taken their seats in the jury box, the name of one Daniel Lappin was drawn by the sheriff from the box as the next

juryman. The said Lappin being called, came to the bar and confronted the prisoner, whereupon the clerk of the court, pursuing the form that had been followed in each previous instance, said: 'Juryman, look upon the prisoner; prisoner, look upon the juryman; do you challenge?' The said Lappin remained standing in the presence of the prisoner awaiting a challenge until a proper and reasonable time had elapsed for a challenge to be made, after which, no challenge having been made either by the prisoner or by the prosecutor of the pleas, the court ordered the said clerk to swear the said Daniel Lappin as a juror. Thereupon, the said Daniel Lappin having placed his hand upon the book, the clerk proceeded to administer to him the juror's oath. After the clerk had commenced to recite the words of the oath to the said Daniel Lappin, and before he had completed the words of the oath, counsel for the prisoner arose and communicated to the court a desire to peremptorily challenge the said Daniel Lappin. The court refused to entertain such challenge at that time on the ground that the proper time for the prisoner to challenge the said Daniel Lappin had gone by; that orderly procedure and the solemnity of the oath required that during its administration all other proceedings should be suspended; that the court would not permit the words of the oath to be interrupted for the purpose of entertaining a challenge, and that the right of the defendant to challenge a juror must be asserted before the words of the oath were commenced. The clerk completed the administration of the oath to the said Daniel Lappin, and he took his place in the jury box as one of the jury for the trial of said cause. No exception was taken by counsel for the defendant to this ruling of the court."

It thereby appears that a reasonable time was permitted to plaintiff in error to interpose any challenge he desired, and there is nothing to justify us in determining that the certificate is untrue, or to indicate that the trial court im-

properly exercised its discretion in respect to what was a reasonable time for that purpose.

' By the provisions of section 80 of the Criminal Procedure act of 1898, *ubi supra,* plaintiff in error was entitled to peremptorily challenge twenty of the jury, and no more. Peremptory challenges thus permitted differ from principal challenges and challenges to the favor. The latter must be supported by causes assigned and established by proof. The former operate to exclude the juror without any cause assigned or proved.

Plaintiff in error puts himself upon the provisions of a supplement to the Jury act, approved April 1st, 1887 *(Pamph. L., p.* 132), which provides that challenges to jurors for any cause whatever, in any suit, civil or criminal, may be made at any time before the juror is actually sworn. So far as peremptory challenges in civil actions are concerned, the provisions of the act of 1887 are supplanted by the "Act concerning jurors," approved April 9th, 1902 *(Pamph. L., p.* 640), which requires such challenges to be interposed as the jurors' names are drawn from the box. *Leary* v. *North Jersey Street Railway Co.,* 40 *Vroom* 67. In that case the Supreme Court also construed the act of 1887 as applying, by its very terms, only to challenges for some cause, and as not applicable to challenges which are peremptory and without cause assigned. In my judgment the language of the act requires that construction, and it is inapplicable to peremptory challenges.

The interposition of a peremptory challenge is then governed by the practice which has prevailed in England, except so far as modified with us. By *Hale P. C.* 293, the ancient practice is stated to be that upon the return of the panel and the calling of the jury the prisoner, in a capital case, is informed by the clerk that these good men now called and appearing are to pass upon his life and death; therefore, if he will challenge any of them, he is to do it before they are sworn. In some of our counties this ancient form is still followed. Hale adds that if no challenge hinders, the jury

are commanded to look on the prisoner, and then severally twelve of them are sworn. By our provisions for a general panel of jurors, out of which a particular jury is selected by being drawn from the box, a modification of this practice has been introduced, and each juror whose name is drawn from the box is commanded to look upon the prisoner, and the latter is asked if he challenges. If no challenge is interposed within a reasonable time, the court directs the juror to be sworn. Upon such direction, or upon the oath being commenced in obedience thereto, the privilege of peremptory challenge ceases.

In *Regina* v. *Frost,* 9 *Car. & P.* 136, Chief Justice Tindal declared the English rule to be that challenges are to be made before the juror is sworn, and that the moment the oath is begun it is too late; and that the oath is begun by the juror taking the book, having been directed by the officer of the court to do so. Baron Parke and Justice Williams agreed in the view stated by the Chief Justice.

If the act of 1887 was applicable to peremptory challenges, I think the same result must follow. The decorum due to the solemnity of the oath and the orderly procedure of the trial justifies a judge in refusing to listen to a challenge interjected into the administration of the oath.

Therefore there is shown, in this respect, no wrong or injury to plaintiff in error by any act of the court, it appearing that a reasonable time to interpose a challenge was allowed to him.

An objection exactly similar in character is presented respecting the refusal to permit a challenge to another juror called. For the reasons previously stated, there is nothing requiring relief or reversal thereon.

It is next argued that wrong and injury was done to the plaintiff in error by a question asked him by the trial judge while he was under examination, having offered himself as a witness in his own behalf. In the course of the examination by his own counsel, he had testified that he, with a colored man named Allen, had visited Paterson about two weeks

before the time when John Christian (for whose killing the indictment was found) received his injury, and that the purpose of their visit was to examine various silk mills and shops for the purpose of breaking into them and robbing them, and that afterward Allen and he had made an appointment to meet in Paterson at three or half-past three in the morning of a certain day for that purpose. He admitted that he had come to Paterson and kept his appointment with Allen, and he testified that Allen, when met according to the appointment, declared that he had already done the "job," and that he had the "stuff" down in the woods. He further testified that he had escaped from the officer who had encountered Allen and himself and had arrested Allen, and that he had gone to New York.

In the course of the examination plaintiff in error was asked by his counsel whether he had been back to Paterson after the time when the "job" was done until he was brought back by the authorities, and he replied that he had. The court then said to him: "Been back on the same sort of errand that you were on here on that night?" To this plaintiff in error answered, "No."

There was no objection interposed or exception taken to the question of the court, but it is contended that injury was done the plaintiff in error, because the question indicated the belief of the judge that the plaintiff in error was "accustomed to criminal practices." As he had just testified to two visits to Paterson in language that admitted of no doubt that they were made with the purpose of committing crime, his admission that he had made subsequent visits to that city might have led the jury to infer that they were made for a like criminal purpose. As such an inference would or might have been prejudicial to him, no injury was done him by giving him an opportunity by such a question to deny such an intent, which he did. Had he admitted it, the trial judge would have instructed the jury to disregard his admission as not pertinent to the issue of his guilt upon an indictment for a previous act.

Two assignments of error are directed to the charge of the court upon the definition of the crime of robbery. There was a general exception taken to the charge, and these assignments of error bring before us the portions of the charge to which they are directed.

The court was led to define the crime of robbery, because it was contended by the state that the killing of John Christian, which was charged against plaintiff in error, was committed in the commission of, or in the attempt to commit, a robbery. The circumstances upon which the charge was based, as they appeared in the evidence so as to justify the jury in finding, were these: that John Christian was the night watchman in the silk mill of Gautschy; that there was silk of considerable value in a locked closet in the mill; that Christian, the watchman, was upon the premises; that the mill was entered by persons who broke open the locked closet where the silk was stored and removed it, and were wrapping it up for the purpose of taking it away; that Christian, with a lantern, was moving in the direction of the room in which the silk was, and that before he reached the room he was struck down with a dye stick, wielded by one of the persons, and was bound and gagged, and by one or both of them was kicked so violently in the side as to fracture his ribs and produce the injury from which he afterward died. Under the statute which makes killing in the perpetration or attempt to perpetrate the crime of robbery murder in the first degree, the court properly proceeded to define what robbery is. This is the language of the court: "Robbery is stealing property with violence from the person or personal custody of another person. It is necessary, in order to constitute that crime, that the goods shall be on the person of the owner, or the owner's agent, or shall be in his presence and in his custody."

It is quite unnecessary to cite cases or declarations of criminal text-writers to the entire correctness of this definition. The contention in behalf of plaintiff in error is evidently not properly directed to an error in the definition but rather to an alleged error in its application.

It is first contended that as Gautschy, the owner of the silk, was not present, there was no robbery committed, and that the court was wrong in declaring that the property, if in the custody of the person employed to watch it, was really in the possession of the owner, through his agent. But we do not think the application of the law on the subject of robbery was erroneous. The watchman was in custody of the property, and the taking of the property from him or from his personal custody by violence or putting in fear was robbery.

It is next argued that the silk removed and in process of preparation for carrying away was not in the presence of the custodian Christian at the time he was struck down. The plain inference drawn by the jury under the charge was that Christian was proceeding toward and had reached within a few feet of the door within which the locked closet was. If unimpeded, a few steps would have brought him to that door and to the immediate presence of the silk of which he had the custody. He was then struck down, and with violence, before he had reached that door. Whether the condition of things at the time the violence was used indicates a completed crime, or whether the preparation of the silk for removal indicates a crime in process, the striking down of Christian was violence, either in perpetrating or attempting to perpetrate a robbery. No error can be found in the charge in that respect.

Several other assignments of error are directed to other portions of the charge in respect to the reliance to be placed by the jury upon the testimony of Allen, the alleged accomplice of plaintiff in error.

It appeared that Allen had pleaded guilty to the indictment against him for the killing of Christian, and had been brought to the witness-stand from the state prison, where he was serving a thirty-years sentence. The jury was told that the law declares that the evidence of an accomplice is not sufficient to convict an accused of crime, and they were advised that they ought not to take Allen's evidence as sufficient for conviction unless substantially corroborated with respect to the essential features of his story.

If this instruction was intended to declare that the jury could not convict the defendant upon the uncorroborated evidence of Allen, it was, perhaps, too strongly stated. *State* v. *Heyer,* 10 *Vroom* 598; *State* v. *Goldman,* 36 *Id.* 394. I do not, however, understand that the judge intended his instructions to extend beyond the cautionary advice usually and properly given to juries respecting the evidence of an accomplice. If erroneous in point of law, the plaintiff in error could not complain as it was in his favor.

But the intent of the objection was to question the charge in respect to certain corroborative features of the evidence submitted by the judge to the jury. It had appeared that the plaintiff in error had been employed in Gautschy's mill at some previous time not far distant. He admitted that he knew of the interior arrangements of the mill, of the place where the valuable silk was deposited, and that the watchman was regularly employed at night to watch the mill and premises, and that Allen possessed no knowledge upon these subjects from his own personal observation. The judge, in submitting the evidence to the jury, drew attention to these facts, and pointed out what had been done in the interior of the mill, and left it to the jury to say whether the uncontradicted facts testified to by others than Allen, respecting the mode of entrance to the premises, the use of the dye stick, the striking down of the watchman on his rounds, were not indicative of a knowledge of the premises, admittedly such as was possessed by the plaintiff in error and not by Allen.

The details, taken one by one, may have had but little force or effect in justifying an inference that somebody with special knowledge of the premises was present. Taken all together, they were susceptible of that inference and so corroborative of some essential features of Allen's testimony, and it was proper for the judge to thus submit them to the jury, and to tell the jury that they might consider whether or not the testimony of Allen was not thus corroborated. Upon this subject it would seem that the admissions of plaintiff in error, when called as a witness in his own behalf, of themselves con-

stituted sufficient corroboration of the statements of Allen. The admission that the two visits to Paterson were for the purpose of robbing silk mills; that at the Gautschy mill, upon the first visit, he called the attention of Allen to the fact that the watchman was then present and that he was always there; that they examined the shop of another owner, and that he told Allen that he did not think there was any watchman in that, but as it was too late to do anything that night they would come there and do something some other night; and the further admission that he had arranged with Allen to meet him in Paterson for the purpose of carrying out the scheme which they found themselves unable previously to carry out, was properly laid before the jury as tending to justify an inference of the truth of Allen's story.

There were other corroborative circumstances suggested to the jury by the judge which are the subject of the succeeding assignments of error. None of them, however, are deemed to present questions requiring review. The court was entirely justified in all that was said by it in respect to the corroboration of Allen's testimony.

A review of the whole case satisfies this court that no error is presented by the exceptions and that no harm or injury has been done plaintiff in error by the course of the trial, but that the judgment and verdict are right.

The judgment must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, HENDRICKSON, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY. 11.

*For reversal*—None.