STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. CONTINENTAL PURCHASING COMPANY, INCORPORATED, JOSEPH BERGER, JOSEPH RICHTER, DAVID BODNER AND ALBERT SCHOEN, PLAINTIFFS IN ERROR.

Argued May 4, 1937—Decided January 5, 1938.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and PARKER.

For the plaintiffs in error, *Samuel I. Kessler* and *Jacob Fox*.

For the defendant in error, *William A. Wachenfeld,* prosecutor of the pleas, *Joseph E. Conlon,* first assistant prosecutor, and *Leon W. Kapp,* special assistant to the prosecutor.

The opinion of the court was delivered by

TRENCHARD, J. The defendants below were indicted for the crime of conspiracy under the common law.

At the trial the defendant Profit was acquitted by order of the court. The remaining defendants were The Continental Purchasing Company, a corporation, Joseph Richter, who was its secretary, Joseph Berger, who was its vice-president, David Bodner, who was the office manager of its Newark office, and Albert Schoen, who was the former manager of its Newark office and later manager of its Elizabeth office. Those defendants were convicted by a general verdict of guilty and they sued out this writ of error.

We shall examine and consider the assignments of error and the specification of causes for reversal in the order in which they are argued by the defendants.

The indictment charged that the defendants "being then and there evil disposed and wicked persons did unlawfully * * * conspire, confederate and agree together to enforce the collection and payment of moneys alleged to be due from divers persons to the Continental Purchasing Company, a corporation, by means of intimidation, force, coercion, oppression and threats to do civil injury." It was more specifically charged that the defendants did "unjustifiably coerce, intimidate, harass, threaten, oppress and embarrass one Albert Landmesser * * * upon an alleged indebtedness due * * * to the Continental Purchasing Company * * * and by these means of duress did obtain from him his signature to certain documents, and as a result thereof the said Albert Landmesser was, on the 31st day of January, 1936, * * * discharged from his employment, impoverished and reduced to want and beggary." Also by similar means, from Cathleen D. Curran did obtain certain documents for the payment of money which resulted in the loss of her employment, causing her pain, suffering, and reducing her to want, misery and poverty; that by similar means the sum of $40 not due and owing was exacted and extorted from Anna Gann and Joseph Gann, her husband, under threat of arrest and imprisonment; that by similar means a diamond engagement ring was unlawfully exacted from Maria Van Volken, under threat of arrest and imprisonment; and that they did procure and obtain from John Van Volken, her husband, a promissory note for $250 to the corporation and a chattel mortgage upon all his household goods, there having been no relationship between the corporation and the husband, John; that by similar means one J. Haven Foote was forced to mortgage his automobile, household goods, and effects, and that thereafter a criminal complaint was made against him to his irreparable injury and degradation.

At the trial it appeared that accounts handled by the corporation had been bought up from defunct concerns. The

state concedes that basically the defendants were engaged in a lawful enterprise. But it contended, however, that the means whereby the moneys were by agreement attempted to be collected were unlawful and constituted a conspiracy. Most of the accounts were secured by promissory notes, chattel mortgages or conditional bills of sale, the accounts coming from furniture concerns, &c., as well as small loan businesses.

The defendants' first point is that "the indictment fails to set forth an indictable offense."

We think there is no merit in this point. The substance of the argument is that the indictment does not charge that the means used were criminal. Assuming but not conceding that this is so, we think the argument is fallacious in law.

It is not essential to criminal liability under the common law that the acts contemplated should constitute a criminal offense for which, without the element of conspiracy, one alone could be indicted. The true rule is that all such acts as have the necessary tendency to prejudice the public or to injure or oppress individuals by unjustly subjecting them to the power of the conspirators are sufficiently tainted with the quality of unlawfulness to satisfy the requirements as to conspiracy. *State* v. *Loog,* 13 *N. J. Mis. R.* 536; *affirmed,* 117 *N. J. L.* 442; *State* v. *Bienstock,* 78 *Id.* 256; 73 *Atl. Rep.* 530; *State* v. *Donaldson,* 32 *N. J. L.* 151; *State* v. *Norton,* 23 *Id.* 33; *Whart. Cr. L.* 487; 5 *R. C. L.* 1069, and cases there cited.

Tested by this rule the language of the indictment is sufficient.

The defendants contend in this connection that the indictment shows that the purpose of the defendants was lawful and that the means used were legal. The answer to this is that it is not so. The language of the indictment plainly shows that the acts charged were oppressive and unjustifiable; that the purpose was to intimidate and frighten so that the debtors would pay, or give additional and different security, usually more valuable, in place of the old and usually insufficient security.

As we have seen, the indictment, after statement of preliminary facts, alleges that the defendants:

"Being then and there evil disposed and wicked persons did *unlawfully* on the fifth day of July in the year of our Lord one thousand nine hundred and thirty-four, conspire, confederate and agree together to enforce the collection and payment of moneys alleged to be due from divers persons to the said Continental Purchasing Company, a corporation, by means of intimidation, force, coercion oppression and threats to do civil injury."

The indictment then charges that pursuant to the unlawful agreement, in execution of it, and to effect its objects, the defendants *"unjustifiably"* coerced, intimidated, harassed, threatened, oppressed and embarrassed certain persons named; and further that under threat of arrest and imprisonment, the defendants *"unlawfully"* exacted and extorted sums of money and other valuable articles, *not due to the defendants,* from certain persons named, and that in execution of the conspiracy, one of the defendants caused the arrest and imprisonment of a victim of the conspiracy to the degradation of his reputation and character. Certainly, taken as a whole, the indictment alleges and shows the combination to have been an unlawful one; that the object and the means were unlawful; and that the effect was injurious and oppressive to individuals in such a degree and magnitude, and the confederacy was so formidable in character as to constitute a criminal conspiracy, irrespective of the existence or non-existence of criminality either in the purpose or the means.

The next point is that it was error for the trial judge to refuse to strike from the indictment the words "being *then and there* evil disposed and wicked persons did unlawfully conspire," &c. We think not. The use of such verbiage in an indictment for conspiracy as descriptive of the crime and the motive, intent and state of mind of the defendants, has the sanction of long practice, and rightly so. *State* v. *Flynn,* 76 *N. J. L.* 473.

The next point is that the trial judge erred in refusing to strike from the indictment certain language in the overt acts charged because they say it was surplusage. We think not.

Although at common law no overt act is necessary to constitute the offense of conspiracy (12 *C. J.* 549) ; such acts

may be charged by way of aggravation (12 *C. J.* 624), and an indictment is not vitiated by the particularity with which the overt act is set forth, if the charge of conspiracy of itself is sufficient. 12 *C. J.* 625.

The next point is that the court erred in admitting evidence of overt acts other than those pleaded in the indictment.

We think not. The rule is that on the trial of an indictment under the common law for unlawfully conspiring to collect money by unlawful and oppressive means, testimony tending to prove other acts of the defendants towards persons other than those mentioned in the indictment, in pursuance of the unlawful agreement, which acts were similar in character and occurred during the same period of time, is properly admissible in evidence for the purpose of establishing the evil intent, design and purpose of the defendants involved, and where, as here, such acts are a part of the same plan or were induced by the same motive. *State* v. *Taylor,* 92 *N. J. L.* 135; *State* v. *Young,* 37 *Id.* 184; 12 *C. J.* 637, and cases cited. Evidence of overt acts of the conspirators indicating a common intent and purpose is competent to show the existence of the conspiracy. *State* v. *Greenberg,* 105 *N. J. L.* 383.

The next point is that the indictment is duplicitous, and that it was error to deny motions to quash prior to and at the end of the trial, and to deny motions for acquittal at the end of the state's case.

The argument is that each overt act charged was a separate offense. Not so. Overt acts in a conspiracy indictment are not in themselves offenses charged, but events incidental to the conspiracy. A combination to commit several crimes is a single offense. *State* v. *Profita,* 114 *N. J. L.* 334.

The next point is that there was error in the admission of testimony by Landmesser and Van Volken as to the consequences of the defendants' oppressive and unlawful conduct towards them.

A sufficient answer is that the testimony was in substantiation of the charges in the indictment, and was relevant, and was properly admitted to show aggravation, particularly where, as here, it relates to the consequences of the con-

spiracy for which defendants were on trial. *State* v. *Mayberry*, 48 *Me.* 218; *Whar. Crim. Pro.* (10th ed.) § 521; *Feldman* v. *Branfman*, 111 *N. J. L.* 37.

The next point alleges error in two respects, (a) refusal of a mistrial because of the prosecutor's remarks in his summation as to the use of red seals on documents and notices used by the defendants, and (b) the court's charge as to the use of such red seals, and refusal to charge as requested thereon.

The prosecutor did comment on the use of red seals and perhaps mistakenly said that such use was illegal; but in view of the charge of the court we find no harmful error here. The court charged: "The use of that red seal in itself is not illegal or unlawful. However, that red seal is not necessary upon that document, and you may consider in deliberating upon this case whether or not in using a document—the seal, if you want to consider the seal as a document—in using the seal which, while it was not unlawful, was not necessary, whether or not that was part of the plan to do these things that are alleged in the indictment." That charge was proper in the circumstances and covered substantially the requests to charge in so far as they were proper.

The next point is that the judge erred in permitting the prosecutor during summation to refer to a letter which was excluded from evidence. We find no prejudicial error here. The reference was merely to the fact that the letter was excluded by the judge. The prosecutor did not in any way attempt to divulge the contents of the letter.

The next point is that the court erred in refusing to grant a mistrial based upon remarks and statements of the prosecutor during his summation and during the course of the trial. While it is true that some of them may have been a bit over-zealous, yet in view of the character of the charges they were not unreasonably so, and should not result in a mistrial where, as here, the judge was not asked to order such remarks stricken out or to charge that they be disregarded. *State* v. *Terry*, 91 *N. J. L.* 539; *State* v. *Biango*, 79 *Id.* 523; *State* v. *Hauptmann*, 115 *Id.* 412.

The next point is that there was error in the court's charge. But the judge's charge must be considered as a whole and so considered we find no error.

The remaining points may be grouped as follows: That the court erred (a) in refusing to direct a verdict of acquittal of defendant Berger; (b) that the court erred in refusing to direct a verdict of acquittal of defendant Schoen; (c) that the verdict was against the weight of the evidence as to those two defendants; and (d) that the verdict was against the weight of the evidence as to the other defendants.

It is obvious that motions to acquit these two defendants could not properly have been granted. Berger was the vice-president of the defendant corporation, and as such had a pecuniary interest in the business. He was one of the sponsors of the manual hereinafter referred to and helped compile it. The evidence tended to show that he was present when one of the victims was threatened by his employe with the loss of his job and was threatened with physical violence. The defendant Schoen was the manager of the offices of the corporation and the evidence tended to show that he bulldozed and browbeat one of the victims and threatened him with arrest because the victim's furniture was dilapidated.

It is also apparent, considering all of the evidence, that the verdict against those two defendants was not against the weight of the evidence.

The same may properly be said with respect to the remaining defendants, and in this connection it is highly significant to observe the contents of the manual which the defendant corporation prepared for the use of its officers and employes and put in their hands. Among other things it said: "This manual or handbook of instructions has been devised as an ever present guide for branch managers, unit managers and key men of this corporation in the conduct of the business of the corporation. It is the voice of the officers of the corporation telling each one how the officers want this business conducted in its various details. This is not merely another book to be kept in the desk drawer, but it is to be read through and through, week in and week out, by every con-

scientious member of the staff whose ambition it is to gain an important responsible and well paid position with this corporation." "The directions given herein are to be followed implicitly, and the answer to almost any question that may be asked by one of the officers of the corporation in the conduct of its business, is contained within these covers." "You are the manager by proxy when calling upon the debtor." It further says that "those who would avoid criticism, rebuke or dismissal will follow the orders contained herein rigidly and regularly." The manual sets forth a very strict and, in some instances, oppressive manner of producing payment by debtors. Among other things it directed that the employes when calling on a debtor, should be "strong, responsible and aggressive" as is the corporation. It further stated that when a collector calls upon a debtor he should "announce the purpose of his visit in a full, firm voice. Ordinarily a debtor will let you into the house rather than run the risk of having his neighbors overhear discussions of his debts. Bear in mind that your first task is to get into the house and sit down." "Demand payment in full at once." "Insist and re-insist on immediate payment in full." "Keep in mind that debtors who are pressed hard enough usually obtain the money from friends, relatives and small loan companies." "You will get payment in full if you put the pressure on hard enough and keep it on long enough." The procedure therein outlined for obtaining substitute or additional security indicates that the corporation, realizing that its past security might be insufficient or shaky, wanted additional security on all household goods in addition to that included under the original security. Finally reference is made in the manual to the fact that the company's managers sometimes gave collectors a file or work sheet with the notations on it "raise hell here"—"this must be collected in full"—"do not turn in without the money"—and the manual then says "these specific lines are favorites with two of our present managers, and to our way of thinking, represent just about the *minimum* possible in the instruction and direction of adjusters."

Considering the contents of this manual, as well as the evidence produced by the state, supporting in every particular the essential allegations of the indictment, it certainly appears, even after a consideration of the evidence produced by the defendants, that the verdict of guilty as to all of the defendants is not against the weight of the evidence.

The foregoing observations we believe in effect dispose of every question raised and argued.

The judgment below will be affirmed.