**UNITED STATES of America ex rel. Frank LUZZI, Appellant,**

v.

**William BANMILLER, Warden, Eastern State Penitentiary, Philadelphia, Pennsylvania.**

**No. 12135.**

United States Court of Appeals Third Circuit.

Submitted March 19, 1957.

Decided Sept. 6, 1957.

Frank Luzzi, pro se.

John E. Marx, Asst. Dist. Atty., of Berks County, Reading, Pa., Frederick O. Brubaker, Dist. Atty., of Berks County, Reading, Pa., for appellee.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Appellant was convicted on September 23, 1953 in the Berks County Court of Oyer and Terminer, Pennsylvania, of burglary and larceny and carrying firearms without a license. He was sentenced to a prison term of not less than 7½ years and not more than 20 years. There was no appeal from the conviction.

On January 29, 1954 he filed a petition for a writ of habeas corpus in the Berks County Court of the Common Pleas. The petition was dismissed and an appeal taken from the dismissal to the Pennsylvania Superior Court. That

tribunal, in an opinion found at Commonwealth ex rel. Luzzi v. Tees, 176 Pa. Super. 528, 108 A.2d 921, affirmed the order of the lower court. The opinion discusses seriatim the grounds on which the petition was based. The first of these was the alleged perjured testimony of a William H. Kline bearing on the identification of appellant at the scene of the robbery. The second dealt with the fact that the sister-in-law of the person robbed served on the jury which found appellant guilty. The third complained of treatment by the State Police. The last point presented was that no notes of testimony had been taken at the trial. There was no appeal from the Superior Court decision.

On July 14, 1955, application was made to the Berks County Court for a writ of coram nobis. The petition set out its grounds as: "1. Court Error, that it failed to establish your petitioner at the scene of supposed crime. 2. Court Errored, when it failed to allow petitioner right to see a (stet) indictment or copy of same, so as to know who was prosecutor, and who was the name of the prosecutor, as he could have challenged the jury according to law. 3. Court Errored, when it accepted perjured testimony to be a matter of record. 4. Your petitioner is innocent of the offense as charged." Under the caption "Argument of Errors" petitioner asserted that he did not see a copy of the indictment until he pleaded "not guilty". He claimed that at that time he did not see the name of the victim of the robbery who, he states, "would surely be the prosecutor in the * * * case, * * *."

The Berks County Court of Quarter Sessions, in denying the petition, stated the latter's grounds as follows: " *  * in summary, that there was error committed at the trial in that it was not established that the petitioner was at the scene of the. crime; that the petitioner was not allowed to see the indictments; that the court accepted perjured testimony and, that the petitioner is innocent of the offenses for which he was convicted." No mention was made of the juror question. The Superior Court affirmed in Commonwealth ex rel. Luzzi v. Courts of Quarter Sessions and Oyer and Terminer of Berks County, 179 Pa. Super. 486, 118 A.2d 227. The opinion stated 179 Pa. at page 487, 118 A.2d at page 227: "Relator's petition for the writ of error coram nobis set forth: (1) That it was not established at the trial that he was at the scene of the crime; (2) that he was not allowed to see a copy of the indictment; (3) that perjured testimony was accepted at the trial; and (4) that he was innocent of the offense charged." There was no reference in the opinion to the juror point appearing in the body of the petition. Allocatur to the Pennsylvania Supreme Court was denied December 27, 1955 (302A Misc. Docket No. 10).

Petition for certiorari to the United States Supreme Court was denied March 26, 1956, 350 U.S. 1001, 100 L.Ed. 865. In that petition, the second stated question was: "Is it not a Constitutional right that an accused in a criminal trial must be given a copy of the indictment so that he can know who is the complainant and who is the prosecutor in the case, so that he can challenge the jury according to law when the jury is being selected. And also so that he can prepare to meet anything and everything that the State has against him and not be taken by surprise?"

It should be here noted that appellant in his reply brief, referring to the Berks County Court opinion dismissing his petition for habeas corpus, states:

"It also added that Habeas Corpus was not the proper remedy, but that Coram Nobis was the remedy to seek, and dismissed the petition.

"Thereupon, appellant petitioned the Berks County Court for a Writ of Coram Nobis which was refused, with a hint that appellant could apply to the Board of Pardons."

There is no allusion in the brief or otherwise to the appeal from the judgment dismissing the habeas corpus. It was only after the decision of the Su-

perior Court affirming the dismissal that the attempt to obtain a writ of coram nobis was made. However, under all the circumstances, we prefer to deal with this appeal on its merits and will therefore so proceed.

On April 12, 1956 a motion for a new trial was filed. The motion was denied and no appeal taken.

The federal proceedings followed. On May 25, 1956 a petition for writ of habeas corpus was filed. On June 5, 1956 the petition was dismissed as it failed to show on its face that state remedies had been exhausted. On June 11, 1956 a petition for reconsideration was filed in which the above sequence of state habeas corpus and coram nobis steps was set forth. The petition was reinstated by order of June 18, 1956 and came on for hearing November 2, 1956.

The questions involved as stated in the petition were: "1. That the arresting officer, one Robert G. Shuck, of the Pennsylvania State Police committed the crime of subornation of perjury, in that he induced a witness for the State to testify falsely at the trial. 2. That perjured testimony was used to make sure the petitioner was convicted. 3. That he could not have had a fair and impartial verdict because one of the jurors was a relative of the complainant in the case. 4. That the trial court suppressed the taking down of any testimony and thereby denied this petitioner the equal protection of the law in that it deprived the petitioner of his right to have a higher court review the errors in his trial."

The contention made in the coram nobis application that relator had been mistreated by the state police was repeated by appellant at the federal court hearing. On the argument before us appellant in his brief seemingly abandons the subornation of perjury and perjured testimony charges and now alleges discrepancies in the testimony of the arresting officer. We feel that the third reason under the coram nobis petition is sufficiently broad to cover this.

The hearing was a full dress affair at which appellant, the arresting officer, the justice of the peace before whom the preliminary hearing had been held, the witness Kline and the particular juror complained of, testified. The court saw to it that every person requested by appellant, appeared.

The petition was dismissed by the court's order of November 23, 1956. In a memorandum opinion accompanying the order the court found appellant's story of the occurrence to be " * * * a fabrication of relator's imagination."; that relator's burden of proof had not been sustained with regard to requesting a trial stenographer and that the relator's testimony of physical abuse was improbable and not to be believed. On all grounds urged by appellant his petition was denied. That action of the court is soundly supported by the record.

The only one of appellant's reasons needing extended comment concerns the alleged prejudiced juror. That person was the sister-in-law of the man whose garage had been robbed. She testified at length in the course of the hearing. She said she and her husband lived about six or seven miles from her brother-in-law. She never saw him socially at all. Her husband was a truckman and had his truck repaired at his brother's garage. About once a month the juror would go there to pay the current bill. The brothers were not connected in any business way. The juror knew about the burglary from seeing the story in the paper. She didn't know whether she saw her brother-in-law after that, prior to trial but she was positive that she did not discuss the matter with him. When she walked into the courtroom she exclaimed to another woman on the panel, "Oh, my goodness * * * this is my brother-in-law's case." She stated that she was not asked if she was related to Burton Degler, her brother-in-law. She was asked questions and she was not challenged. She did not think she was asked any questions by appellant or the person sitting next to him, quite ap-

parently his attorney. She did not recall Luzzi asking any questions of the panel as a whole. Her testimony gives no indication that during the period she was in the courtroom there was any query or comment which might possibly have alerted her to the advisability of not serving as juror in appellant's trial. With respect to prejudice, at the hearing she was specifically asked and answered as follows:

"Q. Mrs. Degler, the fact that you were related to the man who was victimized in this robbery, did that prejudice your vote in any way in this case? A. No, it did not.

"Q. Did you bring back your verdict of guilty on the evidence as presented in the court; is that how you based your verdict, I mean, on what you heard in court? A. On what I heard, yes, that is the way.

"Q. And the fact that your brother-in-law was the one who was robbed had nothing to do with it? A. It did not."

The district judge believed the juror regarding the absence of questions which could have warned her of her position. He accepted her statement that " * * * this relationship did not affect her consideration of the case at all" and he characterized her evidence as "frank and persuasive."

As is immediately seen we must deal with the juror phase of this appeal on its own special facts. From the finding of the district court, based on a complete and fair inquiry, there is no taint of fraud on the part of Mrs. Degler. She, a housewife, chosen for jury duty, seemingly for the first time, was at least surprised at being called for the trial arising out of the robbery of her brother-in-law's place of business. The evidence accepted by the court compels the conclusion that Mrs. Degler had no intimation that she might have been challenged if her relationship to Degler had been known. As she said, "When the jury was selected I was seeing, you know, how they selected them. One lawyer, or whatever it was, on one side and one on the other side. I was asked questions and I was not challenged." On the other hand, as the court found, appellant was represented at the trial "by an experienced attorney who actively examined the prospective jurors on their voir dire". That attorney was not called as a witness at the hearing although there was every opportunity to have him present if it had been so desired.

All of the above by itself could be of small importance but coupled with the conclusive feature of this problem, namely, the exhaustive hearing before the district judge from which he, justified by the record, concluded that the juror had decided the case without prejudice and on the evidence she heard in the courtroom, it brings the overall result within the Brown v. Allen, formula, 344 U.S. 443, 464, 73 S.Ct. 397, 411, 97 L.Ed. 469, footnote 19.[1] The method of the trial judge in seeing to it that the evidential background of the serious issues urged by appellant was conscientiously explored at a hearing called for the purpose and just as conscientiously resolved, well illustrates the proper use of the Brown v. Allen doctrine. The facts before us differ radically from those presented in United States ex rel. DeVita v. McCorkle, 3 Cir., 248 F.2d 1. That opinion therefore does not apply here.

The judgment of the district court will be affirmed.

KALODNER, Circuit Judge, concurs in the result.

---

1. "If useful records of prior litigation are difficult to secure or unobtainable, the District Court may find it necessary or desirable to hold limited hearings to supply them where the allegations of the application for habeas corpus state adequate grounds for relief."