UNITED STATES of America ex rel. James Morris FLETCHER, Petitioner,

v.

Angelo C. CAVELL, Warden.

Civ. A. No. 16229.

United States District Court
W. D. Pennsylvania.

Feb. 28, 1958.

Opinion June 5, 1958.

**320**

Marjorie H. Matson, Pittsburgh, Pa., for petitioner.

Thomas D. McBride, Atty. Gen., of Pennsylvania, Glenn R. Toothman, Jr., Dist. Atty. of Greene County, Waynesburg, Pa., for Commonwealth.

GOURLEY, Chief Judge.

This is a petition for writ of habeas corpus in which petitioner, convicted in the State court of first degree murder and sentenced on February 14, 1956 to life imprisonment, alleges denial of due process under the Constitution of the United States for the reason that one member of the jury was a distant relative of the victim, and the other a relative of the prosecuting county detective, who was also a witness. The defendant did not take the witness stand.

Appeal from said sentence was taken to the Supreme Court of Pennsylvania which affirmed the conviction, Commonwealth v. Fletcher, 387 Pa. 602, 128 A.2d 897. Application to the United States

Supreme Court for writ of certiorari was duly made, and refused on June 10, 1957, 354 U.S. 913, 77 S.Ct. 1300, 1 L.Ed. 2d 1429.

Although the petition, prepared by petitioner without the assistance of counsel, raises a number of questions, it was stipulated at the hearing by petitioner's recently acquired able counsel and the District Attorney that only the issue of relationship on the part of the two jurors was ripe for consideration. It was conceded by the District Attorney, both in his answer and at hearing, that as to this phase of the case petitioner had exhausted his remedies.

The court conducted a most thorough hearing in regard to the two jurors whose presence on the jury petitioner contends deprived him of due process of law.

Because the argument and the authorities submitted by defendant counsel and the District Attorney in their respective briefs failed to lend help in resolving this most vital and crucial issue as it relates to juror Stephenson, I shall, at this stage, proceed with a preliminary opinion in order to invoke the services not only of the parties but also of the Attorney General of the Commonwealth of Pennsylvania to assist in its solution.

The entire record of the state proceeding was incorporated into the record of hearing before this court. The facts which appear to be undisputed, are as follows:

At the selection of the jury, Paul E. Stephenson called for examination on voir dire, testified that he was "perfectly impartial" as between the Commonwealth and the Defendant, that he was free of prejudice or bias, and that he could render a verdict solely from the evidence produced on the witness stand. He was then accepted by both sides, sworn and seated in the box as Juror #1, and subsequently was chosen foreman of the jury.

Mrs. Nellie Barnhart, on voir dire, likewise testified that she could be perfectly impartial, that she could render a

verdict solely from the evidence, without bias or prejudice. She further stated that she knew of nothing she had heard or read which would tend to prejudice her against the defendant. She was then accepted and sworn as Juror #7.

While the selection of the jury continued and before all jurors had been selected and each member of the jury sworn,[1] it came to the attention of counsel for the defendant that Juror Stephenson was the son-in-law of Paul Thomas, the County Detective who had instigated and presented the criminal proceeding,[2] and that Juror Barnhart was a distant relative of the deceased. Counsel for petitioner then requested leave to challenge both of these jurors for cause, or, if that was refused, then peremptorily. The court reserved a ruling on this request, but thereafter refused the challenges. The record does not reflect any hearing by the trial judge as to the request of defendant counsel. At the time when the request to challenge was made, defendant had twelve unused peremptory challenges.

At the hearing in this court Juror Stephenson testified that he was the son-in-law of Paul Thomas, the county detective, having married Ruth Ellen Thomas on August 24, 1947. He further testified that Thomas had been Chief of Police in Waynesburg, Pennsylvania for many years and had been appointed County Detective a couple of years before the trial of defendant's case. He stated that he was on friendly terms with his father-in-law, and from January 1951 ate dinner regularly at Mr. Thomas' house four or five times a week. He knew at the time that his father-in-law was working on the case, but never discussed it with him.

Scott Marshall, a brother of Mrs. Nellie Barnhart, was called to explain that her failure to appear in court resulted from the fact that she is seriously ill and not expected to live. Questioned as to his exact relationship to the deceased victim, Tanner, Marshall testified that his grandmother, Frances Marshall was the sister of Tanner's greatgrandmother, Josine Marshall Phillips. Counsel have stipulated that the relationship was in the 7th degree, as determined by the civil law, and in the 5th degree under canon law.

■ In view of the extreme remoteness of relationship to the victim on the part of juror Barnhart, who apparently never maintained any contact with the victim or his family during his lifetime, and in all probability was not even aware of such existing relationship, and in view of the juror's oath that her deliberation and verdict would be based solely on the evidence presented in the case, it is my considered judgment that retention of juror Barnhart did not result in a denial of due process or a fair trial.

The circumstances relative to juror Stephenson present a most difficult and complex problem.

In this connection, the following question is posed:

Whether a denial of constitutional due process has occurred where in a trial of an accused charged with first degree murder one of the jurors, who served as foreman, was the son-in-law of the chief prosecuting detective and a material witness, whose relationship was brought to the attention of the presiding judge before the selection of the jury had been completed and before trial had commenced.[3]

---

1. The practice in Greene County, Pennsylvania is not to wait until the selection of the entire jury in order to swear the jurors as a group. Rather, upon the completion of the voir dire, each juror is sworn individually as each juror is selected.

2. It is not in dispute that the County Detective, or father-in-law of juror Stephenson, was the Chief Prosecutor who had instituted the information against petitioner and was a witness who testified to circumstantial facts which, combined with other circumstantial evidence undoubtedly played an important role in petitioner's conviction.

3. Juror Stephenson was the first member of the voir dire interrogated and was ad-

This circuit has ruled in cases involving circumstances wherein jurors were related to the victim, but in my judgment are in no way dispositive of the question as to juror Stephenson. In United States ex rel. Luzzi v. Banmiller, 3 Cir., 248 F.2d 303, a juror was a sister-in-law of the victim of a robbery, but maintained slight, if any, contact with the victim, and at time of trial disclosed all the attributes of impartiality and fairness. During her presence in the courtroom, there was no query or comment which might possibly have alerted her to the advisability of not serving as a juror. Her status was not discovered until after the case had been tried. The court therein denied relief.

In United States ex rel. De Vita v. McCorkle, 3 Cir., 248 F.2d 1, a juror had been a victim of a robbery and failed to make this disclosure even though he knew that such experience was a matter of primary concern to defendant counsel exercising challenges, since the jury's prerogative involved a determination of invoking the death penalty or life imprisonment for a murder resulting in the course of an armed robbery. In that case, the circumstances, which rendered the juror biased were not disclosed until long after trial. The court concluded that fundamental unfairness had resulted, and petitioner was entitled to a new trial.

On the other hand, in the instant proceeding, defendant counsel discovered circumstances of alleged bias relative to juror Stephenson in the course of the selection of the jury and before all the jurors had been selected and sworn.

Because of the extraordinary importance which attaches to the disposition of this question, both to the parties and the Commonwealth of Pennsylvania, I feel that further argument, research and evaluation of the law is required in order that appropriate consideration can be given by the court to the rights of the Commonwealth and the Petitioner. I further believe that the parties and the court should be entitled to the benefit of the views and brief of the Attorney General of the Commonwealth of Pennsylvania, who by virtue of vast experience in matters of this kind can undoubtedly serve as an invaluable adjunct in the determination of the question, and in view of the importance of the problem in the administration of justice in the Criminal Courts of the Commonwealth of Pennsylvania.

I shall, therefore, direct that the Attorney General of the Commonwealth of Pennsylvania either personally or by his duly chosen representative, the District Attorney of Greene County, and defendant counsel appear for argument before this court on May 20, 1958, at 10:00 A.M., and that briefs be submitted in support of their respective positions on said date.

## Opinion

GOURLEY, Chief Judge.

In this habeas corpus proceeding petitioner was convicted in a Pennsylvania

---

ministered the oath as juror #1, and was forthwith designated foreman by the presiding judge. Juror Barnhart was named juror #7 and was the 29th member of the voir dire interrogated. It is noteworthy that upon the interrogation of 47 members of the voir dire, after eight jurors had been selected and each administered the oath separately, defendant counsel interposed his objections to juror Stephenson and Barnhart. He raised the objections while he continued to have 12 peremptory challenges remaining.

At the time juror Barnhart had been approved, 16 members of the voir dire were challenged successfully for cause and 7 peremptory challenges were exercised by both the prosecution and the defense. Subsequent to the selection of juror Barnhart, and until the objections were interposed as to jurors Stephenson and Barnhart, 14 challenges for cause had been successfuly made and three peremptory challenges exercised by the parties.

A matter of considerable significance is the fact that the presiding judge excused a member of the voir dire for cause when she voluntarily stated her remote relationship to the decedent.

Criminal State court of first degree murder, and sentenced to life imprisonment. Numerous hearings have been held by this court to resolve the question as to whether petitioner has been denied rights under the Constitution of the United States.

In the course of said hearings it developed that no substantial dispute exists between the Attorney General of the Commonwealth of Pennsylvania, the District Attorney of Greene County, Pennsylvania, and counsel for the petitioner that the rights of the petitioner under the laws and Constitution of the Commonwealth of Pennsylvania were not thoroughly presented to the Supreme Court of Pennsylvania at the time motion for new trial was argued before said court.

▇ In the performance of my trust I have always recognized that the Federal courts should not interfere with the administration of justice in criminal matters in a State court and evaluate the rights of an alleged criminal offender under the Constitution of the United States if a basic state right has been violated, until such time as the highest court in the state has determined the rights of the accused in the state jurisdiction.

For the federal judiciary to interject itself into a state proceeding on federal constitutional questions, when a determination of the issues raised could be disposed of in the application of state law would, in my judgment, preempt state authority and prove a basically unfair imposition upon our state courts.

▇ In this connection, it appears to be the well settled law, as well as a matter of sound judicial policy, that where the issue may be determined under state law or the Constitution of such state, the proceeding should be stayed in the federal court until a determination of the issues by the highest tribunal in the state. Alabama Public Service Comm. v. Southern Ry. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002; Shipman v. Du Pre, 339 U.S. 321, 70 S.Ct. 640, 94 L.Ed. 877; Railroad Comm. of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407.

The following issues have been evoked by this proceeding which have not been considered and determined by the Supreme Court of Pennsylvania under the applicable state law, common law and/or Constitution of Pennsylvania.

▇ Where seven jurors have been selected and sworn in a criminal murder trial in the Commonwealth of Pennsylvania and while twelve peremptory challenges in behalf of the defendant remain, is it basic and fundamental error for the trial court to refuse to accept as challenge for cause or, in the alternative, to grant peremptory challenges of two jurors when the defendant has not been placed in jeopardy where—

(a) Number One juror, being automatically the foreman in the State court, was a son-in-law of the Chief County Detective whose testimony as a State witness was of paramount importance in a case based on circumstantial evidence.

(b) Juror Number Seven was a relative of the murder victim within the fifth degree of consanguinity.

(c) After motion to challenge for cause or, in the alternative, to exercise a peremptory challenge as to Juror Number Seven who was a relative of the murder victim within the fifth degree of consanguinity, the trial judge interrogated said juror in his chambers and also interrogated another juror on the panel who was a brother of said juror as to relationship of the juror selected with the victim, without the presence of defendant or his counsel. Whether under the decisions and the Constitution of Pennsylvania, involving a capital offense, the accused and/or his counsel, or both, should have been present during said inquiry when it is well recognized that the empaneling of a jury is within the purview of the constitutional safeguard. See Commonwealth v. Diehl, 378 Pa. 214, 107 A.2d 543; Prine v. Commonwealth, 18 Pa. 103; Section 9, Arti-

cle I of the Constitution of Pennsylvania, P.S.

I shall, therefore, direct that petition for habeas corpus in this court be stayed until October 15, 1958 in order to enable the parties, jointly or severally, to file appropriate proceedings in the Supreme Court of Pennsylvania to have adjudicated the issues raised under the laws of Pennsylvania, common law and/or Constitution of the Commonwealth of Pennsylvania.

It is noteworthy that in the event the Supreme Court of Pennsylvania lacks authority to consider the issues on petition for rehearing of denial of motion for new trial that the said court is vested with ample authority to entertain a petition of habeas corpus as a court of original jurisdiction. Article V, Section 3, Constitution of Pennsylvania.

Should the Supreme Court of Pennsylvania refuse to entertain said proceeding by October 15, 1958, upon proper application to this court, this court shall provide any additional hearing necessary to effectuate a prompt adjudication.

An appropriate Order is entered.