UNITED STATES of America ex rel. James Morris FLETCHER, Petitioner,

v.

Angelo C. CAVELL, Warden, Western State Penitentiary, Respondent.

Civ. A. No. 16229.

United States District Court
W. D. Pennsylvania.
May 3, 1960.

Marjorie Hanson Matson, Pittsburgh, Pa., for plaintiff.

Glenn R. Toothman, Dist. Atty., of Greene County, Waynesburg, Pa., for defendant.

GOURLEY, Chief Judge.

In this petition for writ of habeas corpus petitioner, who was convicted in the State Court for first-degree murder and sentenced to life imprisonment, alleges denial of due process under the Constitution of the United States for the reason that one member of the convicting jury was a distant relative of the victim, and another juror was the son-in-law of a testifying witness who was Chief County Detective, United States Constitution, Amendment XIV, Section 1.

I am confronted with the following legal question:

Is it intolerable, and thus violative of the 14th Amendment of the Constitution of the United States, as distinguished from being unwise and undesirable for a State Court, in the trial of a homicide, to require an accused to proceed to trial after jurors have been sworn but before jeopardy has attached, when juror No. 1 was the son-in-law of a witness who was Chief County Detective, but was not the Prosecuting Officer to said proceeding, and whose testimony was solely corroborative of circumstantial facts testified to by the Prosecuting Police Officer, together with the additional fact that juror No. 7 was related within the 5th degree of consanguinity to the victim of the homicide?

Petitioner has employed able counsel and together with the intervention of the Civil Liberties Union, has exhausted his legal remedies so that the issue is squarely presented and is undoubtedly ripe for determination by this court. Historically, appeal from his conviction to the Supreme Court of Pennsylvania was refused, Commonwealth v. Fletcher, 387 Pa. 602, 128 A.2d 897, and certiorari therefrom was denied by the Supreme Court of the United States 354 U.S. 913, 77 S.Ct. 1300, 1 L.Ed.2d 1429. Upon petition for writ of habeas corpus to this court, and after extended hearing and argument, in which this member of the court recommended and obtained the intervention of the Attorney General of the State of Pennsylvania, the proceeding was stayed pending petitioner's application to the Supreme Court of Pennsylvania to reconsider the state constitutional issues, which had not been fully adjudicated on appeal, United States of America ex rel. Fletcher v. Cavell, D.C., 162 F.Supp. 319.

Following adverse decision of the Supreme Court of Pennsylvania, Commonwealth ex rel. Fletcher v. Cavell, 395 Pa. 134, 149 A.2d 434, this court entered an order further staying the proceedings pending application to the Supreme Court of the United States for writ of certiorari, which was denied, October 12, 1959, Commonwealth of Pennsylvania ex rel. Fletcher v. Cavell, 361 Pa. 847, 80 S.Ct. 102, 4 L.Ed.2d 85.

Not only at the inception of this proceeding before this court was a most thorough hearing conducted in regard to the two jurors whose presence on the jury petitioner contends deprived him of due process of law, but this court also renewed this privilege to the petitioner and the Commonwealth, as well as the intervening Civil Liberties Union to present any additional testimony, evidence,

argument, or briefs, which any of the interested parties might desire.

The entire record of the state proceeding was incorporated into the record of hearing before this court.

 I commence my evaluation of this petition with the realization of the well-settled law that the District Court may not, on a petition for habeas corpus, usurp the function of the State jury by determining de novo, the innocence or guilt of a prisoner convicted under state process, United States ex rel. Helwig v. Maroney, 3 Cir., 271 F.2d 329.

Without consideration of the merits, therefore, I shall direct my attention only to the facts which pose a constitutional question.

The facts which appear to be undisputed are as follows:

At the selection of the jury, Paul E. Stephenson called for examination on voir dire, testified that he was "perfectly impartial" as between the Commonwealth and the defendant, that he was free of prejudice or bias, and that he could render a verdict solely from the evidence adduced on the witness stand. He was then accepted by both sides, sworn and seated in the box as Juror No. 1, and subsequently was chosen foreman of the jury.

Mrs. Nellie Barnhart, on voir dire, likewise testified that she could be perfectly impartial, that she could render a verdict solely from the evidence, without bias or prejudice. She was then accepted and sworn as Juror No. 7.

While the selection of the jury continued and before all jurors had been selected and each member of the jury sworn,[1] it came to the attention of counsel for the defendant that Juror Stephenson was the son-in-law of Paul Thomas, the County Detective who subsequently testified as a witness corroborating certain investigative conclusions of the Prosecuting State Police Officer and that Juror

Barnhart was a distant relative of the deceased. Counsel for petitioner then requested leave to challenge both of these jurors for cause, or, if that was refused, then peremptorily. The court reserved a ruling on this request, but thereafter refused the challenges. The record does not reflect any hearing by the trial judge as to the request of defendant counsel. At the time when the request to challenge was made, defendant had twelve unused peremptory challenges.

At the hearing in this court Juror Stephenson testified that he was the son-in-law of Paul Thomas, the County Detective, having married Ruth Ellen Thomas on August 24, 1947. He further testified that Thomas had been Chief of Police in Waynesburg, Pennsylvania, for many years and had been appointed County Detective a couple of years before the trial of defendant's case. He stated that he was on friendly terms with his father-in-law, and from January 1951, ate dinner regularly at Mr. Thomas' house four or five times a week. He knew at the time that his father-in-law was working on the case, but never discussed it with him.

Scott Marshall, a brother of Mrs. Nellie Barnhart, was called to explain that her failure to appear in court resulted from the fact that she is seriously ill and not expected to live. Questioned as to his exact relationship to the deceased victim, Tanner, Marshall testified that his grandmother, Frances Marshall, was the sister of Tanner's great-grandmother, Josine Marshall Phillips. Counsel have stipulated that the relationship was in the 7th degree, as determined by the civil law, and in the 5th degree under canon law.

 In view of the extreme remoteness of relationship to the victim on the part of juror Barnhart, who apparently never maintained any contact with the victim or his family during his lifetime, and in all probability was not even aware

---

1. The practice in Greene County, Pennsylvania, is not to wait until the selection of the entire jury in order to swear the jurors as a group. Rather, upon the completion of the voir dire, each juror is sworn individually as each juror is selected.

of such existing relationship, and in view of the juror's oath that her deliberation and verdict would be based solely on the evidence presented in the case, it is my considered judgment that retention of juror Barnhart did not result in a denial of due process or a fair trial.

I was peculiarly concerned about the retention of juror Stephenson whose father-in-law was the County Detective.[2] I am well aware that human relations and associations are not conducted in a vacuum, and that family relationship undoubtedly would create such an affinity as to tend to favor the views and testimony of the immediate relative.

The federal courts jealously guard the rights of an accused. The duty correspondingly increases with the seriousness of the offense and the accompanying penalty. It must be kept in mind that "due process of law" in the enforcement of a state's criminal law expresses a demand for civilized standards of law, and judicial review of that guaranty of the Fourteenth Amendment inescapably imposes an exercise of judgment upon the whole course of the proceedings in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice of English speaking peoples even toward those charged with the most heinous of offenses, Malinski v. People of State of New York, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029.

■ I am, too, not unmindful of the delicate balance which exists, and which must be preserved, between the courts of the states and those of the national government. Every conflict between these courts is by its very nature unseemly and must be avoided if possible, United States ex rel. Almeida v. Baldi, 3 Cir., 195 F.2d 815, 33 A.L.R.2d 1407.

It is with these thoughts foremost in mind that I had provided for extended hearings in order to meticulously scrutinize and evaluate the probability, if any, as to whether the retention of juror Stephenson was intolerable as distinguished from being unwise and undesirable, United States of America ex rel. De Vita v. McCorkle, 3 Cir., 248 F.2d 1.

Accordingly, I have weighed the testimony of County Detective Paul Thomas most assiduously with the view to determining what weight his testimony, construed in a light most favorable to this witness, could conceivably have exerted toward tipping the scales of justice. Upon thoroughly combing the testimony in the state proceeding, together with an evaluation of the records applicable to this case, I am satisfied that said testimony, at best, was cumulative and corroborative of the testimony of State Trooper Harold A. Russell, who had signed the information and was the Chief Investigating Officer.

The record of the state proceeding discloses that Thomas assisted Trooper Russell in making five plaster casts of seven footprints alleged to have been made by the murderer, and that his testimony was limited to identifying the casts and repeating the views of Trooper Russell

---

2. Juror Stephenson was the first member of the voir dire interrogated and was administered the oath as juror No. 1, and was forthwith designated foreman by the presiding judge. Juror Barnhart was named juror No. 7 and was the 29th member of the voir dire interrogated. It is noteworthy that upon the interrogation of 47 members of the voir dire, after eight jurors had been selected and each administered the oath separately, defendant counsel interposed his objections to juror Stephenson and Barnhart. He raised the objections while he continued to have 12 peremptory challenges remaining.

At the time juror Barnhart had been approved, 16 members of the voir dire were challenged successfully for cause and 7 peremptory challenges were exercised by both the prosecution and defense. Subsequent to the selection of juror Barnhart, and until the objections were interposed as to jurors Stephenson and Barnhart 14 challenges for cause had been successfully made and three peremptory challenges exercised by the parties.

A matter of considerable significance is the fact that the presiding judge excused a member of the voir dire for cause when she voluntarily stated her remote relationship to the decedent.

that said casts bore a similarity to the size of defendant's footsteps.

 Under the circumstances Detective Thomas' role was minimal, and as such, could not, despite the retention of juror Stephenson, have resulted in such fundamental unfairness as to constitute a denial of due process of law.

Petition for writ of habeas corpus will be refused.

This opinion shall serve as Findings of Fact and Conclusions of Law.

An appropriate Order is entered.