STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. RALPH ROSANIA, DEFENDANT-RESPONDENT.

Argued May 23, 1960—Decided July 18, 1960.

*Mr. John F. Crane,* Assistant Essex County Prosecutor, argued the cause for plaintiff-appellant (*Mr. Brendan T. Byrne,* Essex County Prosecutor, attorney and of counsel; *Mr. Benjamin L. Bendit,* Legal Assistant Prosecutor, on the brief).

*Mr. Robert J. Jerome* argued the cause for defendant-respondent.

The opinion of the court was delivered by

HALL, J. ▮▮ The State appeals from an order of the Essex County Court setting aside the defendant's conviction in 1952 for first-degree murder and granting him a new trial. He had been sentenced to life imprisonment pursuant to the recommendation of the jury. The court below held that a decision of the United States Court of Appeals for the Third Circuit in a federal *habeas corpus* proceeding which had resulted in the granting of similar relief on constitutional grounds to two others, DeVita and Grillo, indicted and tried with Rosania for the same crime, but who received the death penalty at the hands of the jury, also redounded to his benefit. *United States ex rel. DeVita v.*

*McCorkle,* 248 *F.* 2d 1 (3 *Cir.* 1957), reversing 133 *F. Supp.* 169 (*D. C. N. J.* 1955), *certiorari* denied 355 *U. S.* 873, 78 *S. Ct.* 121, 2 *L. Ed.* 2d 77 (1957), rehearing denied 355 *U. S.* 908, 78 *S. Ct.* 329, 2 *L. Ed.* 2d 263 (1957).

In determining whether the County Court was in error in so concluding, as the State here contends, we must initially summarize the facts of the crime and the long course of litigation that has come out of it. The indictment was for felony murder based upon a killing ensuing from the commission of a robbery. *N. J. S.* 2A:113–1 and 2. On November 9, 1951, a uniformed special police officer of the City of Newark was shot and killed in a holdup. He was accompanying the manager of a food market carrying the store receipts to a bank for night deposit. As soon as the two entered an automobile in front of the market on Newark's busiest street to start for the bank, two men, Grillo and DeVita, approached the car with drawn revolvers and demanded the money. As the officer raised his hands, he was shot by Grillo who then took the bag containing the receipts and fled with DeVita. Rosania, a former employee of the market, was not present at the immediate scene, but was instrumental in plotting the robbery. He had originally suggested it and, in fact, resumed his employment for one day a week before the crime to "case" the nightly bank deposit operation for the information of his confederates. On the night in question he assisted in obtaining the guns from their storage place in a railroad station locker and went with the other two to a bench in a park facing the market where all three perfected the plan. Rosania pointed out the manager and the special officer inside the store to Grillo and DeVita. Fearing recognition by former fellow employees, he then left, after arranging with his associates to telephone him at a diner after the holdup was completed. This DeVita did. Rosania asked what happened in the robbery and then picked both of them up in a friend's car. The three were arrested a few days later and confessed fully to the police. Some

of the robbery proceeds were found and the murder weapon recovered. In such a situation Rosania, by aiding and abetting in the commission of the felony, was punishable as a principal on the murder charge to the same extent as the one who fired the fatal shot. *N. J. S.* 2*A*:85–14, 2*A*:113–4. *State v. Smith,* 32 *N. J.* 501, 521 (1960).

As the Court of Appeals said, "The real problem before the trial jury was whether its verdict should be 'guilty' without any recommendation (in which event the death penalty was mandatory) or 'guilty' with a recommendation of life imprisonment." 248 *F. 2d,* at *p.* 2. Grillo and DeVita by their own testimony substantially verified the oral and written statements of guilt they had previously given the police, and practically speaking contested only the matter of punishment. They contended, in mitigation, that the actual shooting was unintentional and accidental. The State vigorously urged the jury to impose the death penalty. Rosania in addition offered the defense that he had withdrawn from the robbery plan before the crime took place, but the testimony of his two confederates served to establish his participation up to the moment he left the park bench for the reason previously indicated. The trial judge instructed the jury that if they believed the contention that he had withdrawn before the holdup was consummated, he must be acquitted. Obviously from its verdict, the jury rejected the defense. As to all the defendants, the court very properly charged in accordance with our law that under the evidence the only possible verdicts were guilty of murder in the first degree, with or without recommendation, or acquittal, to be reached as to each defendant separately.

Grillo and DeVita appealed to this court and their convictions were affirmed. *State v. Grillo,* 11 *N. J.* 173 (1952). The United States Supreme Court denied *certiorari.* 345 *U. S.* 976, 73 *S. Ct.* 1123, 97 *L. Ed.* 1391 (1953). Rosania took no appeal and has sought no post-conviction relief of any kind until the present application.

In 1953 DeVita obtained a state writ of *habeas corpus* on a claim of constitutional defect in the form of the jury verdict as it applied to him. The trial court discharged the writ, *In re DeVita*, 27 *N. J. Super.* 101 (*Law Div.* 1953), and we affirmed on the opinion below. 13 *N. J.* 341 (1953). *Certiorari* was denied. *DeVita v. State of New Jersey*, 346 *U. S.* 923, 74 *S. Ct.* 309, 98 *L. Ed.* 416 (1954).

Shortly thereafter Grillo, and later DeVita also, moved for a new trial before the trial judge asserting that they had been "denied due process of law in that they were tried by a jury which could not have heard the case if the facts now known had been revealed at the time the jury was selected." There thus came into the case for the first time the federal constitutional question finally held by the federal court to require the setting aside of the death sentence verdicts. The basis of the claim was this: it had just been discovered that one member of the trial jury had himself been the victim of an armed street robbery several months before the instant crime; the fact was not disclosed on his *voir dire* examination but, although he was not asked the direct question and said he knew of no reason why he could not sit as a fair and impartial juror, he should have volunteered the information in view of express questions on the subject put to some talesmen both before and after his examination; and if this juror's prior experience had been known, the defense would not have accepted him, but would have exercised a peremptory challenge. The conclusion urged in effect was that at least the real possibility of bias must be imputed to an individual who had suffered a similar experience and consequently, where the sole question the jury had to decide was life or death and it had chosen the latter, there was such fundamental unfairness as to amount to denial of due process under the Fourteenth Amendment and to require a new trial. The trial judge found no violation of law and denied the motion. A majority of this court agreed and

there was an affirmance on the general basis that there was no charge of actual bias or prejudice and that the factual situation was not sufficient to warrant a presumption of either. 16 *N. J.* 103 (1954). Two justices dissented. The paramount importance of the punishment issue in the question before the court is further demonstrated by the statement in the final sentence of the dissenting opinion: "A life should not be taken by legal process unless every reasonable doubt is resolved in favor of the condemned, and unless the best judicial procedure has been 'rigidly and jealously enforced' * * *." (16 *N. J.*, at *p.* 116). It should be noted that an additional basis of bias was urged for the first time on the appeal. The same juror had answered in the negative a question asking whether he knew "any of the State's officers or personnel." It was claimed this was knowingly false and so further indicated prejudice because the newspaper story of his holdup indicated that he ordinarily had a police escort each night when he took the receipts from his business to the bank and that he had been questioned by city police after he had been robbed. We felt that this claim was also insufficient to require a new trial.

DeVita then commenced his federal *habeas corpus* action which, after numerous steps not necessary to detail, culminated in the Court of Appeals decision on August 16, 1957, reached by a vote of four to three. The majority reached the opposite conclusion from ours, finding that with respect to a trial "the design of which was to have the jury pass on the essentially judicial question of sentence, life or death, instead of the traditional jury fact finding and determination of guilt or innocence" (248 *F.* 2*d,* at *p.* 8), the facts demonstrated at least colorable or probable bias in the juror to the extent that a fair trial may have been destroyed and such was sufficient to require a new trial. The minority felt that any possible prejudice was effectually negatived by the jury's actual differentiation in punishment treatment between the two sentenced to death and Rosania. The State's

petition for *certiorari* was denied, 355 *U. S.* 873, 78 *S. Ct.* 121, 2 *L. Ed.* 2d 77 (1957), as was an application for rehearing thereof. 355 *U. S.* 908, 78 *S. Ct.* 329, 2 *L. Ed.* 2d 263 (1957). Thereafter the County Court also ordered a new trial for Grillo because of the complete identity of his situation. The new trial of the two was held in April 1958. Again the only issue was that of punishment. The jury returned a verdict of guilty, but this time recommended life imprisonment. No appeal was taken.

Rosania's application—as we have said, the first occasion on which he sought any relief from his conviction—was in the form of a motion for a new trial. By consent it was treated by the judge (who had had no previous connection with the case) as an application for a state writ of *habeas corpus* in order to avoid any question of timeliness. We pass over all adjective problems so that it may be certain meritorious consideration is afforded of the question involved. *Cf. Janiec v. McCorkle,* 52 *N. J. Super.* 1, 17–18 (*App. Div.* 1958). It may be observed that Rosania waited for two years after the Court of Appeals decision and about a year and a half after the second trial of Grillo and DeVita before instituting this proceeding. We may surmise that until our decision in *State v. Williams,* 30 *N. J.* 105, decided June 1, 1959, holding for the first time in this State that on a retrial of a murder indictment following the reversal of a conviction for second-degree murder, the accused could not be put to trial again for the crime in the first degree, he feared that if he were successful in obtaining a new trial, he would have to risk the death penalty again. The question whether the holding of *Williams* extends to the retrial of a reversed conviction for first-degree murder where there had been a recommendation of life imprisonment so as to preclude the subsequent imposition of the death penalty is posed to us here in the event we should affirm the County Court, but in view of our disposition of the appeal, we do not reach it.

██ In deciding whether the Court of Appeals in effect decided Rosania's case as well as DeVita's and Grillo's, we need not be concerned with consideration of whether we are technically bound on any question of the interpretation or application of the Federal Constitution in a given factual situation by the decision of a federal court lower than the United States Supreme Court. We of course recognize the latter to be the final arbiter. *Schlemm v. Schlemm,* 31 *N. J.* 557, 571 (1960). Nor is it of any consequence whatever whether we agree or disagree with the conclusion finally reached by the Court of Appeals. (It is interesting to note that one scholar in the field has commented that the court's finding marked a distinct advance in the law of due process. *Reitz, "Federal Habeas Corpus: Post-Conviction Remedy for State Prisoners,"* 108 *U. Pa. L. Rev.* 461, 495–496 (1960).) We recognize that judges may sincerely reach opposite conclusions on the same facts in the field of due process and that Congress has entrusted to the federal courts by the federal *habeas corpus* statute the last word, so to speak, on the matter of whether imprisonment of a criminal defendant under a state court judgment is unlawful by reason of violation of the Constitution and the laws of the United States. 28 *U. S. C. A.* § 2241(c)(3); *cf. Brown v. Allen,* 344 *S. S.* 443, 73 *S. Ct.* 397, 97 *L. Ed.* 469 (1953); *Reitz, "Federal Habeas Corpus: Post-Conviction Remedy for State Prisoners," supra.* Rather, we look at the problem before us from the practical viewpoint of whether we conscientiously feel the Court of Appeals would give the same relief to Rosania if he sought *habeas corpus* there. If we think the answer would be affirmative, the County Court's action should be sustained; otherwise, not.

It seems to us from our study of the Court of Appeals opinions that it found fundamental unfairness from the participation of the juror who had been previously robbed only in respect to and because of the imposition of the death penalty. The underlying rationale clearly is that one who himself had been put in fear of his life and robbed at the

point of a gun could not well have the requisite unprejudiced objectivity in judging whether two defendants, who admitted doing the same thing and killing a man in the process, should live or die for their act. Running throughout both the majority and concurring opinions is the continued emphasis on the paramount significance of the death sentence. We have previously quoted two portions of Judge McLaughlin's majority opinion to this effect. We need refer to only one or two more. Immediately after our second quotation, he said this:

"For that kind of trial the Fourteenth Amendment insists on the most impartial tribunal the reasonable needs of society will permit. With Kuhnle a member of it, the DeVita-Grillo jury was not that sort because 'One who has been assaulted, threatened with a deadly weapon and robbed is not likely to forget or forgive nor to treat lightly or even fairly similar conduct in others. This is a normal human reaction following customary behavior, expected and anticipated by the background of experience.'" (248 *F. 2d,* at *p.* 8)

Judge Hastie, speaking for himself and Chief Judge Biggs in concurrence, said it was inconceivable to him that the juror's prior experience could have left him "capable of objective determination of the appropriate punishment for these defendants" and it was fundamentally unfair that the juror "should have participated in the decision whether the accused should live or die." (248 *F. 2d,* at *p.* 10) And finally, the court in ordering relief directed (248 *F. 2d,* at *p.* 9) that the new trial should be confined to the question of sentence alone if New Jersey had such a separate procedure. (We do not, so the new trial was general.) Phrases in the opinion to the effect that the "process" was void and the juror was "grossly disqualified" must be read in this context. So we feel that the Court of Appeals was not thinking about relief for Rosania at all, and there is no room for saying, as the County Court in substance did here, that the opinion indicates he stands in exactly the same position and thus automatically applies to him.

Nor do we think it reasonable to conclude that the federal court would reach the same result if Rosania were before it seeking a new trial. What has been said about the death penalty as the crucial factor in the court's mind is again pertinent. This is perhaps further pointed up by another decision of the same court decided just a month later, in which Judge McLaughlin also wrote the opinion. *United States ex rel. Luzzi v. Banmiller,* 248 *F.* 2d 303 (3 *Cir.* 1957), *certiorari* denied 355 *U. S.* 924, 78 *S. Ct.* 367, 2 *L. Ed.* 2d 355 (1958). There the court could find no prejudice and so denied relief with respect to a state court conviction and sentence of imprisonment for burglary, larceny and carrying fire arms without a license where it was discovered after the trial that one of the jurors was a sister-in-law of the victim. (She had denied any prejudice when examined in a previous state court *habeas corpus* proceeding.) The court specifically stated that the facts differed radically from those in *DeVita* and that the opinion therein did not apply.

It is obvious, of course, that there could have been no possible prejudice on the matter of Rosania's punishment, for the jury gave him the lowest penalty it could for first degree murder. The only question would have to be whether there was colorable or probable bias as to guilt since the sole other alternative the jury had was acquittal. The stress is laid in the opinion, as we have said, on probable bias as to punishment only in a juror who had been held up against defendants who had admittedly done the same thing, that is, against those who had actually brandished the weapon, put the victim in fear and taken his money. We do not read the opinion to intimate, and believe it in fact would be unreasonable to conclude, there could be similar bias as to guilt of one who was not an actor at the scene, where that is in issue, or that there is a substantial risk of a juror who had suffered such an experience thereby having a preconceived opinion that all defendants in criminal cases are guilty as charged.

We cannot conclude, under the rationale of the Court of Appeals opinion in *DeVita* or on any other basis, that Rosania suffered any fundamental unfairness and was denied due process in his trial by reason of the participation of the juror in question in view of the result thereof, nor do we believe that the federal court would reach an opposite conclusion. Consequently, justice did not warrant or require that he be granted a new trial and the County Court erred in doing so.

The order is reversed.

*For reversal*—Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.