Ralph Rosania, pro se.

WORTENDYKE, District Judge.

As will appear from the opinion in United States ex rel. DeVita v. McCorkle, 3 Cir., 1957, 248 F.2d 1, certiorari denied McCorkle v. DeVita, 1957, 355 U.S. 873, 78 S.Ct. 121, 2 L.Ed.2d 77, rehearing denied 355 U.S. 908, 78 S.Ct. 329, 2 L.Ed. 2d 263, DeVita, Grillo and Rosania were convicted of murder in the first degree (N.J.S.A. 2A:113–1) in the Essex County (New Jersey) Court, Law Division. DeVita and Grillo were sentenced to death. The jury recommended life imprisonment for Rosania (N.J.S.A. 2A:-113–4). The convictions of DeVita and Grillo were affirmed by the Supreme Court of New Jersey on appeal. See State v. Grillo, 1952, 11 N.J. 173, 93 A.2d 328. Rosania did not appeal, and is pres-

**Application of Ralph ROSANIA for Writ of Habeas Corpus.**

**Civ. A. No. 276–61.**

United States District Court
D. New Jersey.

June 7, 1961.

ently serving his sentence in the New Jersey State Prison.

DeVita and Grillo petitioned this Court for a writ of habeas corpus. Their petition was denied (133 F.Supp. 169); but on appeal, the denial of the petition was reversed by the Third Circuit Court of Appeals, which remanded for the issuance of the writ. DeVita and Grillo were thereafter retried, convicted, and sentenced to life imprisonment. They have not appealed from their respective second convictions.

Two years after the Third Circuit Court of Appeals reversed this Court and remanded for the issuance of a writ as to DeVita and Grillo, and a year and a half after their second trial, Rosania first applied for and obtained a new trial, but the County Court's order granting the new trial was reversed by the New Jersey Supreme Court, State v. Rosania, 1960, 33 N.J. 267, 163 A.2d 139. Having thereafter unsuccessfully applied to the Supreme Court of the United States for a writ of certiorari, Rosania v. State of New Jersey, 1961, 365 U.S. 864, 81 S.Ct. 828, 5 L.Ed.2d 826, Rosania now petitions this Court for a writ of habeas corpus, and contends that the writ should be allowed because of the decision of the Third Circuit Court of Appeals in United States ex rel. DeVita v. McCorkle, supra.

In unanimously reversing the Essex County Court's order granting Rosania a new trial, the New Jersey Supreme Court considered, but distinguished, the decision of the Third Circuit Court of Appeals in DeVita, and decided that the Court in DeVita "was not thinking about relief for Rosania at all, and there is no room for saying, as the County Court in substance did here, that the (Court of Appeal's) opinion indicates he stands in exactly the same position and thus automatically applies to him" (33 N.J. at page 275, 163 A.2d at page 144). The same (New Jersey Supreme) Court refused to consider it reasonable "to conclude that the federal court would reach the same result if Rosania were before it seeking a new trial" (33 N.J. at page 276, 163 A.2d at page 144).

The Third Circuit Court of Appeals held that DeVita and Grillo, who, by reason of the jury's failure to recommend mercy in their cases, were sentenced to death, were deprived of their constitutional rights to a fair and impartial trial by reason of the failure of one of the members of the jury to disclose that he had previously been assaulted, threatened with a deadly weapon, and robbed. In concluding that the Third Circuit would not have found equal prejudice on the part of the juror against Rosania, the New Jersey Supreme Court, in Rosania (33 N.J. at page 276, 163 A.2d at page 144) stated: "that there could have been no possible prejudice on the matter of Rosania's punishment, for the jury gave him the lowest penalty it could for first degree murder. The only question would have to be whether there was colorable or probable bias as to guilt since the sole other alternative the jury had was acquittal." At page 8 of the opinion [248 F.2d] in United States ex rel. DeVita v. McCorkle, supra, Judge McLaughlin, speaking for the Third Circuit Court of Appeals, said: "The assurance of an impartial tribunal is too vital to be subjected to speculation concerning the quantum of prejudice flowing from this grossly disqualified juror. In a capital case at least counsel should be able to rely on prospective jurors answering questions with candor and not be forced to deal with each talesman as a hostile, evasive witness. This principle was especially applicable to the trial of appellant and his co-defendants the design of which was to have the jury pass on the essentially judicial question of sentence, life or death, instead of the traditional jury fact finding and determination of guilt or innocence. For that kind of trial the Fourteenth Amendment insists on the most impartial tribunal the reasonable needs of society will permit." It was upon the foregoing quoted language that the New Jersey Supreme Court, in the Rosania case, concluded that the Federal Court would have denied a writ to Rosania had he applied for it. In further support of this conclusion, the New

Jersey Supreme Court cites United States ex rel. Luzzi v. Banmiller, 3 Cir., 1957, 248 F.2d 303, certiorari denied 355 U.S. 924, 78 S.Ct. 367, 2 L.Ed.2d 355, which distinguished United States ex rel. DeVita v. McCorkle. In the Luzzi case the sister-in-law of the victim served on the jury, which found the defendant guilty. The conviction was for burglary, larceny and carrying fire arms without a license. The defendant applied to the Federal District Court for a writ of habeas corpus, which was denied. In affirming the District Court, the Third Circuit Court of Appeals pointed out that the allegedly prejudiced juror, who was the sister-in-law of the victim, was not asked respecting her relationship, but was otherwise interrogated and not challenged. The Court of Appeals decided that no prejudice to the accused resulted from the relationship between the juror and the victim. In Luzzi the writ was discharged after a hearing in the District Court upon which it clearly appeared that no prejudice was suffered by the applicant there.

In United States ex. rel. Fletcher v. Cavell, 3 Cir., 1961, 287 F.2d 792, which followed DeVita, but distinguished Luzzi, a State prisoner sentenced to life imprisonment petitioned the District Court for a writ of habeas corpus. The writ was denied after a hearing, 183 F.Supp. 335. One of the trial jurors, after stating his impartiality, had been accepted by both sides and was immediately sworn and seated as juror number 1. Later in the course of the selection of the trial jury it was disclosed to the defense that this juror was the son-in-law of the county detective who had investigated the crime and who was to be a prosecution witness, and that another juror, who had already been sworn as number 7, was a distant relative of the victim of the murder. The defense thereupon sought leave to challenge both of these jurors for cause, or in the alternative, peremptorily. The request was denied. The Court of Appeals held that juror number 1 "in declaring himself to be impartial and without prejudice, while not revealing that he was the son-in-law of the County Detective who was one of the investigative officers in the very matter to be tried, who was to be a material witness at the trial, and whose testimony * * * (the juror) would believe, created an intolerable situation that resulted in a fundamentally unfair trial to appellant." (287 F.2d at page 797.) The opinion stated that the problem in the Luzzi case "differed completely from the present question"; and found that the petitioner had sustained the burden of showing essential unfairness " 'not as a matter of speculation but as a demonstrable reality.' " United States ex rel. Darcy v. Handy, 1956, 351 U.S. 454, 462, 76 S.Ct. 965, 970, 100 L.Ed. 1331.

Rosania presently contends that in effect he was deprived of a trial by twelve impartial jurors because one of the twelve members of his jury was prejudiced as a matter of law. In the initial appeals of Grillo and DeVita, 11 N.J. 173, at page 178, 93 A.2d 328, at page 331, the opinion of the New Jersey Supreme Court discloses, that several days after the offense, for which all three of the defendants were indicted, "Rosania admitted his part in the robbery in which Law was killed and detailed to a police sergeant the planning of the robbery with Grillo and DeVita over a period of more than a month prior to the crime. On the basis of this information DeVita and Grillo were again questioned, and each admitted his participation in the robbery and the killing of Law." In State v. Rosania, 33 N.J. 267, at page 269, 163 A.2d 139, at page 140, the New Jersey Supreme Court summarizes the record of Rosania's participation in the crime as follows:

"Rosania, a former employee of the market, was not present at the immediate scene, but was instrumental in plotting the robbery. He had originally suggested it and, in fact, resumed his employment for one day a week before the crime to 'case' the nightly bank deposit operation for the information of his confederates. On the night in question

he assisted in obtaining the guns from their storage place in a railroad station locker and went with the other two to a bench in a park facing the market where all three perfected the plan. Rosania pointed out the manager and the special officer inside the store to Grillo and DeVita. Fearing recognition by former fellow employees, he then left, after arranging with his associates to telephone him at a diner after the holdup was completed. This DeVita did. Rosania asked what happened in the robbery and then picked both of them up in a friend's car. The three were arrested a few days later and confessed fully to the police."

Thus, upon his own admission, Rosania became an abettor of the crime committed by Grillo and DeVita and therefore punishable as a principal. N.J.S.A. 2A:-85–14. The jury's recommendation of life imprisonment for Rosania, N.J.S.A. 2A:113–4, precludes an inference that he was denied a fair trial by reason of the presence on the jury of the person who had been a victim of an armed street robbery, but had not volunteered a disclosure of that fact during the selection of the jury. Having admitted the offense, Rosania's sole jeopardy on the trial was the question of whether the jury would recommend mercy in his case, and thereby save him from the death penalty, which would otherwise have been mandatory. The fact that the jury decided this single issue in Rosania's favor conclusively negatives the possibility that he was deprived of a fair trial by reason of the failure of the juror to disclose that he had previously been a victim of an armed robbery. That such would probably have been the view of the Court of Appeals in the DeVita case, had Rosania been before it, is suggested by the following explanatory portion of the majority opinion (248 F.2d 1, at page 9): "In allowing the writ we reiterate what we have already said to the effect that the one disputed point at the trial of the defendants in the state court was whether the jury should recommend life imprisonment. We do not understand that there is a New Jersey procedure which will permit the retrial of appellant (DeVita) and Grillo on the question of sentence alone. If we are mistaken as to this the writ will be for the purpose of granting a new trial limited to that question."

I therefore am impelled to accept the reasoning of the New Jersey Supreme Court in State v. Rosania, 33 N.J. 267, 163 A.2d 139, as the correct interpretation of the effect of United States ex rel. DeVita v. McCorkle, 3 Cir., 248 F.2d 1, upon the application of Ralph Rosania for a writ of habeas corpus.

It is, therefore, on this 7th day of June, 1961, Ordered that the petition of said applicant for said writ be and hereby is denied.